UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| JOHN KEITH LINDLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:19-cv-1029 JD |
| | ) | |
| CITY OF ELKHART, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Plaintiff John Lindley worked for the City of Elkhart when a coworker accused him of

rape. After Elkhart began an investigation, the woman retracted that accusation. Mr. Lindley

alleges that the damage was already done, though. He claims that Elkhart violated his rights

during its investigation, and that his reputation was harmed when the false accusation spread to

the public. He also claims in an amended complaint that Elkhart retaliated against him for filing

his initial complaint. He sued the City of Elkhart, various city officials, and the woman who

accused him. All of the defendants except the accuser moved to dismiss the complaint for failure

to state a claim. The Court grants the motion as to the federal claims, and thus does not address

any state claims at this time.

## I.  FACTUAL BACKGROUND

Plaintiff John Lindley began working for the City of Elkhart at the Elkhart Airport in

2008. In 2019, his supervisor retired and Mr. Lindley received a promotion to Maintenance

Chief. After his promotion, Mr. Lindley began experiencing conflict with another employee he

used to work with but who now reported to him. Sometime later, Mr. Lindley was summoned to

a meeting at the human resources office. That meeting was attended by the human resources

director, a city attorney, and other city officials. Mr. Lindley was informed at that meeting that

the employee with whom he had been having problems had made accusations against him. In particular, she alleged that he cussed at her and sexually harassed her and, most notably, that he raped her several months ago. Mr. Lindley denied the accusations and asked to go to the police station to take a lie detector test. The officials declined, saying they would conduct their own investigation. A week later, Mr. Lindley was contacted by a retired human resources official who had been retained to lead the investigation. The individual asked Mr. Lindley if he had used foul language towards or threatened the employee, and Mr. Lindley said no.

The employee later recanted her accusation of rape. Mr. Lindley alleges, though, that the allegation had already become public knowledge and had harmed his reputation. He also alleges that the City had improperly conducted its investigation with civilian officials instead of law enforcement officers. He thus filed this suit against the City of Elkhart, various city officials, and the accuser, asserting claims under state and federal law. After he filed that initial complaint, Mr. Lindley was informed that a routine drug test came back positive for marijuana and that he would be suspended for thirty days without pay. Mr. Lindley alleges that the test was inaccurate and that he asked for a retest but that the City declined. Mr. Lindley thus filed an amended complaint in which he added a claim for First Amendment retaliation, claiming that his suspension was actually retaliation for his filing of the initial complaint. After the defendants removed this case to federal court, the accuser filed an answer, but the rest of the defendants moved to dismiss.

## II.  STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff, accepts the factual allegations as true, and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143,

1146 (7th Cir. 2010). A complaint must contain only a "short and plain statement of the claim

showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That statement must

contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its

face, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and raise a right to relief above the speculative

level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However, a plaintiff's claim need

only be plausible, not probable. *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930,

935 (7th Cir. 2012). Evaluating whether a plaintiff's claim is sufficiently plausible to survive a

motion to dismiss is "'a context-specific task that requires the reviewing court to draw on its

judicial experience and common sense.'" *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th

Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

### III.  DISCUSSION

Mr. Lindley asserts multiple claims against the defendants. He asserts a claim under

§ 1983, alleging that they violated his constitutional rights in the course of investigating the rape

accusation. He also asserts a First Amendment retaliation claim under § 1983, alleging that they

suspended him in retaliation for filing his initial suit. His complaint includes claims under state

law, too, including claims for defamation and infliction of emotional distress. Each of the

defendants (except the accuser) moved to dismiss all of the claims for failure to state a claim.

The Court first addresses each of the federal claims, and because Mr. Lindley has not adequately

pled a federal claim, the Court does not reach the state claims.

### A.     Improper investigation

Mr. Lindley first claims that the defendants violated his rights in investigating the

accusation against him. He asserts that they violated various constitutional rights, but it is

difficult to pin down why he believes the investigation was improper. One of his arguments is

that that the defendants violated his rights because the accusation against him involved criminal

wrongdoing, but that it was investigated by human resources officials instead of by sworn law enforcement personnel. Mr. Lindley never articulates why that would be wrongful, though, nor does he cite any authority in support of that position. The government as an employer has an interest in maintaining a safe and productive workplace and in having employees who can work together to carry out the government's functions. An allegation that one employee raped another clearly threatens those interests and would plainly warrant an investigation for that reason, apart from any interest the government also has in law enforcement. That remains true whether the alleged rape occurred on or off the job. There is no constitutional reason why such an investigation must be conducted by police officers, either. Companies often retain outside investigators or outside counsel to conduct internal investigations, including investigations concerning criminal activity. There is no reason that the government as an employer can't function similarly; the Constitution does not require a government employer to outsource its internal investigations to the police. And again, Mr. Lindley cites no authority to the contrary.

Mr. Lindley also complains that the defendants refused his request for a criminal investigation. However, an individual "does not have a constitutional right to have the police investigate his case at all[.]" *Rossi v. City of Chicago*, 790 F.3d 729, 735 (7th Cir. 2015); *see also DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989). Mr. Lindley next complains that he was questioned about the accusation without counsel present. The Constitution protects public employees against being coerced to make statements that could incriminate themselves under threat of losing their jobs. *Garrity v. New Jersey*, 385 U.S. 493, 500 (1967); *Homoky v. Ogden*, 816 F.3d 448, 452 (7th Cir. 2016). Public employees cannot be disciplined for refusing to give such a statement unless they are advised that evidence obtained as a result of their statement will not be used against them in a criminal proceeding. *Homoky*, 816 F.3d at 452.

"However, a public employee may be compelled to answer questions in a formal or informal proceeding investigating allegations of misconduct, even if the answers are incriminating, so long as the state does not use the statements in any subsequent criminal proceeding." *Id.* Here, Mr. Lindley was never prosecuted, so no statements he made were used against him. Nor does he allege that he refused to make a statement or that he was disciplined as a result. Thus, he has not plausibly alleged any claim on that basis.

Mr. Lindley finally argues that the defendants violated his procedural and substantive due process rights under the Fourteenth Amendment. Mr. Lindley cannot state a procedural due process claim, though, as he does not allege that his employment was terminated or that he suffered some other deprivation of a property right. Mr. Lindley's substantive due process claim is similarly undeveloped. He asserts that the defendant's conduct "shocks the conscience" because accusations of criminal misconduct were investigated by civilian employees. That conduct would not shock the conscience, though. To the contrary, it would be shocking if the City did *not* investigate an allegation that a supervisor raped his subordinate. Mr. Lindley acknowledges that the City had a duty to conduct an investigation, and as already discussed, he hasn't shown how involving civilians in the investigation violated any constitutional protections. He thus failed to plausibly allege that he suffered a deprivation of any constitutional rights, so the Court grants the motion to dismiss this claim as to all defendants.

**B.     Retaliation**

Mr. Lindley next asserts a retaliation claim. After he filed his initial complaint, he was suspended for thirty days without pay for a positive drug test. Mr. Lindley alleges that the drug test was inaccurate and pretextual, and that the real reason for his suspension was retaliation for filing his suit. He thus filed an amended complaint asserting a claim under § 1983 for First

Amendment retaliation. The defendants moved to dismiss on the ground that Mr. Lindley has not plausibly alleged that he engaged in any protected activity.

The first element of a First Amendment retaliation claim is that the plaintiff engaged in activity protected by the First Amendment. *Hagan v. Quinn*, 867 F.3d 816, 822 (7th Cir. 2017); *Phelan v. Cook Cty.*, 463 F.3d 773, 790 (7th Cir. 2006). The First Amendment protects the rights to speak and petition, among others. U.S. Const. amend. I. Speech by a government employee, however, is protected only if the employee "spoke as a citizen on a matter of public concern." *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 386 (2011); *see also Connick v. Myers*, 461 U.S. 138 (1983). The activity here is a lawsuit instead of just speech, but the Supreme Court has held that this standard applies equally to conduct protected by the First Amendment's Petition Clause as its Speech Clause. *Guarnieri*, 564 U.S. 386. Thus, even when the activity at issue is a lawsuit subject to the Petition Clause, the employee must show that the employee filed the suit as a citizen on a matter of public concern, not merely "as an employee on a matter of purely private concern." *Id.* at 398.

The defendants argue that Mr. Lindley's lawsuit was not protected activity because it addressed a private concern, not a matter of public concern. The Court agrees. Mr. Lindley's complaint primarily took issue with the way in which he was investigated and the effect it had on him and his employment. A complaint about how those things impacted him personally is a matter of private, not public, concern. Even to the extent his complaint touched on a matter of public concern, in alleging that the City investigated the accusation internally instead of using the police, that still does not suffice. "[S]peech lacks the public concern element if it concerns a subject of public interest but the expression addresses only the personal effect upon the employee." *Phelan*, 463 F.3d at 791; *see also Kubiak v. City of Chicago*, 810 F.3d 476, 483–84

(7th Cir. 2016);  *Bivens v. Trent*, 591 F.3d 555, 561 (7th Cir. 2010). That description describes

Mr. Lindley's claim well. His grievance with the investigation was with how it affected his own

rights, and the relief he sought was an award of damages for the personal effect it had on himself.

Mr. Lindley's response brief makes no attempt to engage with this line of cases and offers little

more than a conclusory assertion that his activity was protected. The Court therefore holds that

Mr. Lindley has failed to plausibly allege that he engaged in protected activity, so the Court

grants the motion to dismiss his retaliation claim.

**C.     State law claims**

The defendants also moved to dismiss the state law claims. Having dismissed the only

federal claims, though, the Court declines to address those claims on their merits. If Mr. Lindley

is unable to state a federal claim in an amended complaint (or declines to file one), the Court

intends to relinquish supplemental jurisdiction over any state claims under 28 U.S.C.

§ 1367(c)(3). "'[W]hen all federal claims in a suit in federal court are dismissed before trial, the

presumption is that the court will relinquish federal jurisdiction over any supplemental state-law

claims.'" *RWJ Mgmt. Co., Inc. v. BP Prods. N. Am., Inc.,* 672 F.3d 476, 479 (7th Cir. 2012)

(quoting *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010)). That

presumptive course would be appropriate here. The arguments as to the state claims concern the

scope of state causes of action and the applicability of different immunities under state law. A

state court should have the chance to answer those questions of state law. Unless Mr. Lindley is

able to plead a federal claim, the Court intends to relinquish supplemental jurisdiction and

remand the case to state court. The Court thus declines to address the motion to dismiss as to the

state claims at this time.

## IV.  CONCLUSION

The Court GRANTS the motion to dismiss [DE 23] as to Mr. Lindley's federal claims. It is difficult to see how Mr. Lindley could amend those claims so as to cure their defects, but plaintiffs generally receive at least one chance to try. Thus, if Mr. Lindley wishes to amend his federal claims, he may file a motion for leave to amend his complaint by May 18, 2020. Otherwise, the Court will dismiss the federal claims with prejudice and remand the case to state court for further proceedings on the state claims.

SO ORDERED.

ENTERED:  April 17, 2020

　　　　　　　/s/ JON E. DEGUILIO
Judge
United States District Court

8